## IN THE MATTER OF THE ESTATE OF CATHARINE DUNN, DECEASED.

*Services of sisters to each other—no recovery for.*

Sisters living together in the same family cannot recover for services rendered by one to the other in the absence of an express contract.

*Decided February 6, 1890.*

Louisa J. Dunn, the administratrix of the estate of Catherine Dunn, deceased, presents a claim against said estate for $525, for personal services rendered the decedent in her life time, in nursing and taking

In the matter of the Estate of Catharine Dunn, Deceased.

care of her for thirty-five weeks at fifteen dollars a week, and prays that the same may be allowed as a valid claim against said estate.

All of the parties interested have been notified of the pendency, prayer and time of hearing of this application, but are not now here to resist the same. The testimony is conclusive that Louisa J. Dunn rendered the services for the period specified, and it must be conceded that the amount charged for such services is reasonable. It remains, however, to be determined whether she can recover under the following state of facts :

Louisa and Catharine were sisters, were unmarried and lived with their mother as one family, she keeping house and providing for all the household expenses. Catharine had real and personal property. She became insane many years ago, and was insane up to the time of her death. It became necessary to appoint a guardian for the purpose of taking charge of her property, and, on September 24, 1883, a guardian was appointed and he continued to act up to the time of her death. The services herein specified were rendered during the thirty-five weeks preceding her death. She required care and attention by reason of her condition.

The testimony does not disclose the fact that any agreement was entered into by or between Louisa, and the guardian of Catharine, nor that there was

In the matter of the Estate of Catharine Dunn, Deceased.

any agreement, or understanding that she was to render such services and to receive pay therefor; nor that Louisa at any time, presented any account or claim to the guardian for such services.

*Phillip Roettinger*, for Louisa Dunn.

GOEBEL, J.

As a rule, where services have been rendered by one person to another, the law presumes a promise on the part of the one who has received the benefits of such services, to pay what they are reasonably worth. This however, may be rebutted by any proof that shows an intention to give and receive without compensation. The relationship, by consanguinity or affinity, is a fact which tends to rebut the presumption which the law raises, that a promise to pay is intended where personal services are rendered; but this alone, does not overcome the presumption, except in the case of parent and child. *Smith vs. Milligan*, 43 Pa. St. 107. *Poorman vs. Kilgore*, 26 Pa. St. 365, 372.

Where a parent goes to live with a child, the law implies no promise on the part of the parent to pay for boarding and necessaries furnished by the child. Without an express contract there can be no recovery in such case. *Lynn vs. Lynn*, 29 Pa. St. 369.

Where a son continues in the employ of his father after his majority, the law implies no contract on the part of the father to pay the son for his services;

the position of the parties being accounted for by the relation existing between them. So, where a father, after his son had been in his employ many years, declared to witnesses that he intended to pay his son for his work ; it was held that this was not evidence of the existence of a contract for wages between the parties ; and that it was error to permit the jury to infer a contract from such declarations. *Hertzog vs. Hertzog*, 29 Pa. St. 465.

It has also been held that the relationship of grandfather and grandchild excludes the implication of a promise, and the grandparent will not be permitted to recover for the maintenance of grandchildren from the estate of their father, unless there be proof of a previous request, contract, and an express promise on the part of the father to pay for it. *Duffey vs. Duffey*, 44 Pa. St. 399.

It was held in *Amey's Appeal, Hipwell's Estate*, 49 Pa. St. 126, that though the relationship of father-in-law and son-in-law is not in itself sufficient to rebut the presumption of a promise to pay for services rendered, yet where a father-in-law went with his two sons to live upon a small farm, bought by his son-in-law partly for a home for them, and there remained until the death of his son-in-law, domesticated, and occupying the house as a part of the family, the father and sons being clothed, and the sons and daughters educated at the expense of the son-

In the matter of the Estate of Catharine Dunn, Deceased.

in-law, who was for the greater part of the time absent, but no debt or credit account was kept, nor any contract made by the son-in-law to pay his father-in-law for services, nor liability admitted by him, these facts were sufficient to rebut the presumption that there was an understanding that one was to pay, and the other to receive compensation for services rendered.

It has also been held that the relation of parent and child, step-parent and step-child, brother and sister, and the like, existing between persons living together in the same household, creates a strong presumption that no payment nor compensation was intended to be made for services rendered by one to the other, beyond that received at the time they were rendered. The person claiming pay for services in such a case, must overcome this presumption by clear, direct and positive proof that the relation between the parties was not merely the ordinary one of parent and child, or brother and sister, but was that of debtor and creditor, or servant and master, and must show some arrangement or contract to that effect. *Hall vs. Finch, Adm'r.* 29 Wis. 278.

Counsel have not cited any case where a child was entitled to recover for services rendered a parent nor have we been able to find any case.

The rule is, that the father is entitled to such services while the child lives with him and is maintained

by him.   This rests upon the parental duty of mainte-
nance, and furnishes some compensation to the
father for his own services rendered the child.

Numerous cases may be found where a father was
held entitled to recover for the support and mainte-
nance of his child, and all of the cases cited by counsel
bear upon that subject.   It would now appear that the
old rule has been relaxed to the extent, at least, that
if the father be without means to maintain his chil-
dren according to their future expectations, or if he
have the means, but the income of the children is
larger than his own, an allowance may be made to
the parent for their maintenance.   *Trimble vs. Dodd,
Guard.,* 2 Tenn. Ch. 502, and cases cited.

But we do not see what bearing such cases can
have upon the question whether a child can recover
for personal services rendered such parent.

There is a wide distinction between the right of a
parent to recover for the maintenance of a child, and
of a child from a parent for services rendered such
parent.   The former depends upon conditions.   In
the latter it is absolutely denied unless there be
an express contract.   The relationship by con-
sanguinity, rebuts the presumption which the law
raises, that a promise to pay was intended.   *Smith
vs. Milligan,* 43 Pa. St. 107.

We do not mean to be understood as saying that the
relation by consanguinity or affinity precludes a right to

In the matter of the Estate of Catharine Dunn, Deceased.

a recovery (except in the case of parent and child), .but that the presumption which the law raises, must be overcome by clear, direct and positive proof that the relation between the parties was that of debtor and creditor, and that some arrangement or contract existed between them to that effect.

Louisa and Catharine were related in the second degree of consanguinity. Has she overcome by testimony the presumption that the law raises in such case? We think not. When we take into consideration, also, that they lived together in the same household, that Catharine was not married, that Louisa would be entitled to part of Catharine's estate at her death, and knew that she had an estate at the time, in the hands of a guardian, who could have made a contract for the payment of such services, these circumstances create a strong presumption that no payment nor compensation was intended to be made for such services.

The allowance of this claim must be denied for want of proof of a contract, or understanding as to payment for such services.